UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
UNITED STATES,

        Plaintiff,

- against -

SASHA GEORGE, RYAN MENDEZ, AND
ANTOINE MORRIS,

        Defendants.
----------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
10-CR-632 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

On July 21, 2011, defendant Ryan Mendez pled guilty to a Hobbs Act Robbery Conspiracy for his participation in a violent robbery crew that targeted automobile parts shops in Brooklyn.[1] On January 30, 2013, this Court sentenced Mendez to ninety-six months of incarceration, to be followed by three years of supervised release. Mendez is currently incarcerated pursuant to that sentence and he is scheduled to be released on January 27, 2018. Presently before the Court are three *pro se* motions filed by Mendez (Doc. Nos. 88, 94, 103, 107) requesting that his prison sentence be reduced based on the alleged neglect of his medical needs by the Bureau of Prisons (the "BOP").[2] For the reasons set forth below, Mendez's motions are denied.

## BACKGROUND

Mendez's motions relate to his treatment for chronic pain due to nerve damage, resulting from multiple gunshot wounds sustained prior to the events leading to his incarceration. Since

---

[1] The specific criminal act for which Mendez pled guilty was a robbery of an "Autozone" store in Brooklyn on July 14, 2010. Mendez and two accomplices entered the store with their faces covered and armed with what appeared to be handguns. They forced employees to lie prone on the floor and surrender their cellphones, and then ordered one of the employees to open a store safe. Police officers responded to a 911 call of a robbery in progress and arrested Mendez inside the store. (*See* Compl. (Doc. No. 1).)

[2] Mendez has filed multiple letters with the Court in support of his motions and requesting the Court's intervention in his medical treatment. (Doc. Nos. 87—91, 93— 95, 98–99, 103, 107, 115, 118, 124.)

this Court imposed sentence on January 30, 2013, Mendez has been incarcerated at BOP facilities in West Virginia ("USP Hazelton") and Pennsylvania ("USP Lewisburg"). Mendez is currently incarcerated at USP Lewisburg.[3]

In a *pro se* motion filed on January 9, 2014, Mendez asked this Court to reduce his prison sentence by an unspecified amount of time pursuant to 18 U.S.C. § 3582.[4] (Doc. No. 88.) Mendez stated that the BOP had been providing him with inadequate "substitute" medications for his pain, and that some of those drugs even caused negative side effects, including "partial seizures." Mendez claimed that the BOP's medical staff and other prison officials were neglecting his wellbeing in other ways. For example, he was denied the lower bunk of a bunk-bed despite his physical ailments, and once injured himself when he fell to the floor while trying to descend the ladder from the top bunk. Mendez indicated that he had filed letters and administrative complaints through the prison system and requested that the Court intervene in the BOP's medical decision-making. (*Id.*, Ex. A ¶¶ 2–7.)

In light of Mendez's allegations, on January 15, 2014, this Court ordered his attorney in the underlying criminal case, Michael Sporn, to contact the BOP regarding Mendez's medical treatment and status, and then to file a follow-up letter with the Court. On March 6, 2014, Sporn filed a letter advising the Court that he had communicated with the BOP's regional counsel, who had, in turn, conveyed Sporn's concerns regarding Mendez's condition and treatment to the

---

[3] Mendez's medical complaints date back to his pretrial incarceration at the Metropolitan Correctional Center ("MCC") and the Metropolitan Detention Center ("MDC"). The docket reflects that, at a status conference on March 9, 2011 (prior to Mendez's guilty plea), this Court ordered an update from the government and/or MDC regarding Mendez's medical treatment. On July 21, 2011, the same day that Mendez pled guilty, the Court's minute entry indicates that, although Mendez reported having been evaluated by an independent neurologist, he continued to complain about pain in his arm, and insisted that his prescribed medication failed to address that pain effectively. The Court responded by ordering the BOP to have Mendez reevaluated by independent doctors in order to address those pain management issues.

[4] In a letter to the Court filed on December 27, 2013, Mendez notified the Court for the first time since being sentenced that his medical needs were allegedly being neglected. He noted that he had written to his attorney, and also that he was preparing the forthcoming motion. (Doc. No. 87.)

BOP's Regional Health Administrator. Sporn noted that the Regional office had apparently been in contact with the health services staff for the correctional facility at which Mendez was confined, and that Sporn was still awaiting further information. Sporn added that he had written to Mendez and also attempted to contact Mendez's "unit team" at the facility where he was imprisoned. He agreed to keep the Court apprised of the outcome of his inquiries.[5] (Doc. No. 92.)

On April 4, 2014, Mendez filed an "Amended Motion for Reduction of Sentence" under 18 U.S.C. § 3582. (Doc. No. 94.) Mendez stated that, on March 11, 2014, he signed an authorization to release his medical file to Sporn, whereupon BOP medical personnel discontinued all of his medications – ostensibly so that Mendez could undergo testing for nerve damage. Mendez insisted that his nerve damage was well-documented, and that the BOP interrupted his medication as "retaliation" for the administrative complaints and letters that he was filing. Mendez asked this Court to shorten his prison sentence so that he could be released and "receive adequate medical treatment." In the alternative, Mendez requested that the Court transfer him to MDC in Brooklyn and send him to a hospital for treatment. (*Id.* ¶¶ 6–8.)[6]

On June 2, 2014, Sporn filed a letter setting forth the results of his inquiries. (Doc. No. 97.) Sporn noted that, prior to being in the BOP's custody, Mendez had apparently been taking a medication that was a "schedule 1 substance," that the BOP disallows prisoners from taking such

---

[5] In the meantime, on February 10 and 24, 2014, and on March 3, 2014, Mendez filed three more letters addressed to the Court, and he filed an additional letter on March 6, 2014. Mendez continued to complain about the BOP's purportedly inadequate treatment of his pain, urging that the medications he was receiving were ineffective and asking to be placed on a specific named medication, as well as for physical therapy. Mendez attached letters that he had written to BOP doctors and staff to the same effect. (Doc. Nos. 89–91, 93.) In one of those letters to the Court (Doc. No. 91), Mendez acknowledged having received a response from the BOP's medical staff explaining that Mendez was already taking three different pain medications and that the particular medication Mendez wanted to have prescribed was "disapproved" by the BOP. (Doc. No. 91.) Mendez noted that "[e]ven though all of these things are true," his current medications were having no effect on his pain. (*Id.*)

[6] Mendez claimed that, by consistently neglecting his pain, the BOP "Medical Department" violated his Eighth Amendment right to be free from the infliction of cruel and unusual punishment. (Doc. No. 94 ¶ 4.)

3

drugs, and that the alternative drug substituted by the BOP was ineffective for treating Mendez's pain. Sporn also stated that, according to Mendez, the BOP was providing him with an improper combination of drugs. Sporn observed that, in March 2014, medical staff at USP Hazelton concluded that Mendez was receiving properly-prescribed doses of three different medications, but that, due to Mendez's recent complaints, his dosage for two of those medications had been increased. According to USP Hazelton's staff, "all of [Mendez's] medical conditions are being, and have been, properly addressed" – a notion at which Sporn expressed incredulity. Sporn added that, since being transferred from USP Hazelton to USP Lewisburg, Mendez had written to him and complained about his poor treatment.[7] (*Id.*)

On December 1, 2014, Mendez filed a supplement to his April 4, 2014 amended motion, asserting that he had gone without medication from March through September 2014,[8] forcing him to rely on over-the-counter medications such as Aspirin. The use of the over-the-counter medication resulted in Mendez's hospitalization for an ulcer, after which he was again provided his prescription medication. In his supplemental submission, Mendez again requested that the Court release him or send him to a medical facility. (Doc. No. 103.)

---

[7] Mendez filed another letter to this Court on June 9, 2014, in which he complained that BOP medical personnel had discontinued all three of his medications, and that he had been placed in a second-floor cell – thereby requiring him to walk up and down a set of stairs. Mendez stated that, when he complained to prison staff, he was warned to stop submitting administrative complaints or else his situation would "get worse." At another point, after having been "given numerous incident [r]eports," prison staff handcuffed and shackled him inside a cell for twenty-four hours, which Mendez characterized as retribution for his medical-related complaints. Mendez further stated that he normally used a cane, but that, after he got into a fight with another inmate, the BOP medical staff took away his cane because, according to a prison doctor, "if [Mendez] can fight without the cane, [Mendez] could walk without it." (Doc. No. 98.) Mendez attached to his letter the response of a BOP staff member concerning an administrative complaint that Mendez had filed on May 19, 2014. (*Id.* at 5). In that response, the BOP advised Mendez that he was scheduled to undergo certain medical procedures, and also notified him that he had been observed "hoarding" one of his medications. Because that particular medication was a controlled substance, Mendez was violating prison rules. (*Id.*)

[8] Mendez alleges that this deprivation of medication was retaliation for his numerous complaints of medical negligence. He alleges further retaliation in the form of physical violence by correction officers and their withholding of his food. (Doc. No. 103.) Prior to Mendez's supplemental submission, on September 9, 2014, Marcus Lige – who was apparently Mendez's cellmate at USP Lewisburg in 2014 – submitted an "Amicus Curiae Letter" on Mendez's behalf corroborating Mendez's allegations of retaliation. (Doc. No. 100.)

4

On August 20, 2015, the government submitted a response in opposition to Mendez's motions. The government noted that Mendez – who has a long history of substance dependency – was seeking narcotic pain killing medication that is prohibited by BOP policy forbidding the dispensing of narcotic drugs in BOP facilities. It further asserted that Mendez has received extensive healthcare services during his incarceration, remarking that Mendez's medical record for the past two years consists of 386 pages. (Doc. No. 117.) Mendez replied, contesting many of the factual allegations in the government's response and asserting that he is again being deprived of his prescribed medication. (Doc. No. 118.)

## DISCUSSION

Mendez seeks a reduction of his prison sentence under 18 U.S.C. § 3582. (Doc. Nos. 88, 94, 103.) Section 3582 governs the imposition of a sentence of imprisonment. Subsection 3582(c), which was enacted under the Compassionate Care Act, lists certain narrow circumstances in which this Court may modify an already-imposed term of imprisonment. *See* 18 U.S.C. § 3582(c). Although Mendez does not identify the particular subsection of 18 U.S.C. § 3582 upon which he is seeking relief, the only plausible ground for his motion is § 3582(c)(1)(A)(i), which allows the Court, upon duly considering the sentencing factors under § 3553(a), to lower an imposed prison sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).[9] Those "extraordinary and compelling reasons" are apparently Mendez's ongoing physical pain and the supposed neglect of his medical needs that he claims to be suffering at the hands of the BOP. However, and

---

[9] 18 U.S.C. § 3582 provides three other situations in which a court may modify a term of imprisonment: (1) if a defendant is at least seventy years of age and has served at least thirty years in prison (in conjunction with certain other conditions); (2) if a defendant has been sentenced to a term of imprisonment based on a sentencing range subsequently lowered by the Sentencing Commission; or (3) if the modification is necessary to correct a clear error, or, upon the government's motion, based on a defendant's provision of substantial assistance in an investigation or prosecution. 18 U.S.C. § 3582(c)(1)(A)(ii)–(c)(2). None of those circumstances exist here.

5

importantly for present purposes, relief under that subsection can be granted only "upon motion of the Director of the Bureau of Prisons." 18 U.S.C.§ 3582(C)(1)(A).

Here, it was Mendez – *not* the BOP – who moved for the sentence of imprisonment to be reduced pursuant to 18 U.S.C. § 3582. Consequently, insofar as Mendez's motions can be read as seeking to reduce his prison sentence based on "extraordinary and compelling reasons," this Court lacks jurisdiction to grant the requested relief in the absence of a motion from the BOP. Mendez is thus legally foreclosed from obtaining such relief under § 3582. *See Stewart v. United States*, Nos. 13-CV-5279, 02-CR-395, 2013 WL 4044756, at *1, 2–3 (S.D.N.Y. Aug. 9, 2013) ("The Compassionate Care Act, the United States Sentencing Guidelines, and a substantial array of prior authority make it clear that a motion by the BOP is a prerequisite to the Court's reduction of a sentence based on compassionate release"); *United States v. Traynor*, No. 04-CR-582, 2009 WL 368927, at *1–2 (E.D.N.Y. Feb. 13, 2009) (collecting cases).[10]

Nor would Mendez be entitled to relief even if this Court were to construe his papers as a collateral attack on his sentence under 28 U.S.C. § 2255.[11] Section 2255 provides a prisoner in federal custody with a limited opportunity to contest the legality of his sentence by way of a motion to vacate, set aside, or correct the sentence in the court that imposed it. *See United States*

---

[10] "The procedures through which inmates (or others) can request that the Bureau of Prisons make a motion under § 3582 are set forth at 28 C.F.R. § 571.60–64. Such requests should "ordinarily" be submitted by the inmate in writing, and must, at a minimum, include the 'extraordinary and compelling' circumstances claimed, and the 'proposed release plans' of the inmate. 28 C.F.R. § 571.61. The regulations set forth an approval process for these requests, starting with approval of the Warden, and subsequently requiring approval of other officials (including the Regional Director, General Counsel, and the Director of the BOP). *Id.* § 571.62." *Traynor*, 2009 WL 368927, at *2 n.3 (citing *Homick-Van Berry v. Nelson*, No. 08-CV-891, 2008 WL 687258, at *5 n.2 (D.N.J. Mar. 11, 2008)). Under the regulations, the BOP will move for modification only when there are "particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." *Id.*

[11] The Court is offering this as merely a hypothetical analysis and is not actually converting Mendez's request for relief into a motion under 28 U.S.C.§ 2255. *See Castro v. United States*, 540 U.S. 375, 383 (2003) (holding that a district court may not *sua sponte* convert a post-conviction motion, brought under a different provision, into a motion under 28 U.S.C. § 2255 without first giving the movant an opportunity to decline the conversion or withdraw the motion; *Adams v. United States*, 155 F.3d 582, 584 (2d Cir. 1998).

*v. Addonizio*, 442 U.S. 178, 185 (1979); *Stewart*, 2013 WL 4044756, at *2–3. To obtain relief, a prisoner in federal custody must show that his sentence: (1) was imposed in violation of the United States Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to impose the sentence; (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Put differently, collateral relief is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.1995) (citation and internal quotation marks omitted).

None of the § 2255 grounds apply to the instant case. Mendez refers to nothing in either of his motions implicating the constitutionality or legality of the sentence that this Court imposed. Rather, those motions concern the alleged neglect committed by the BOP in overseeing Mendez's medical needs while in custody at BOP facilities. While Mendez does invoke the Eighth Amendment's prohibition on cruel and unusual punishment, that argument is directed only at the conditions of his imprisonment and thus the *execution* of his sentence – not at the underlying lawfulness of that sentence. Thus, even assuming, for the sake of argument, that Mendez's papers were deemed a challenge to his sentence under 28 U.S.C. § 2255, those motions would still have to be denied.

Inasmuch as it appears that Mendez intends *not* to seek a reduction or the vacatur of his sentence, but rather to mount a challenge to his prison conditions, a "writ of habeas corpus under [28 U.S.C.] § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001); *see Jiminian v. Nash*, 245 F.3d 144, 146–47 (2d

Cir. 2001) ("A motion pursuant to § 2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as . . . prison disciplinary actions, prison transfers, type of detention and prison conditions"); *Sullivan v. United States*, No. 02-CV-4947, 2002 WL 32096584, at * 1 (E.D.N.Y. Dec. 6, 2002) (finding that inmate's request for review of BOP's decisions regarding medical treatment challenged the execution of his sentence, and thus should have been brought as a petition for habeas corpus).[12]

A petition pursuant to § 2241 must be filed in the United States district court where the petitioner is in custody. *See* 28 U.S.C. § 2241(a) (providing federal courts with power to grant writ of habeas corpus "within their respective jurisdictions"). This requirement is jurisdictional. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004); *Ezeigwe v. Holder*, No. 12-CV-2200, 2012 WL 1965403, at *2 (E.D.N.Y. May 29, 2012). Because Mendez is currently incarcerated at USP Lewisburg in Lewisburg, Pennsylvania, a petition for a writ of habeas corpus under 28 U.S.C. § 2241 could be properly filed only in the Middle District of Pennsylvania. *See generally Concepcion v. Kehoane*, No. 91-CV-4143, 1991 WL 127063, at *1 (E.D. Pa. July 8, 1991) (transferring venue to the Middle District of Pennsylvania where the "allegations of the complaint relate to occurrences which took place at the United States Penitentiary at Lewisburg which is located in Union County in the Middle District of Pennsylvania").

---

[12] To the extent that Mendez alternatively requests that he be transferred to MDC in Brooklyn, a petition under 28 U.S.C. § 2241 would arguably provide the appropriate legal avenue for seeking that relief as well.

8

## CONCLUSION

For the foregoing reasons, Mendez's motions seeking to have this Court reduce his prison sentence (Doc. Nos. 88, 94, 103) are denied. The Clerk of Court is directed to terminate the pending motions, and mail a copy of this Memorandum and Order to Mendez at the following address:

> Ryan Mendez
> Inmate No. 78343-053
> USP Lewisburg
> P.O. Box 1000
> Lewisburg, PA  17837

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
         March 1, 2016

_____
ROSLYNN R. MAUSKOPF
United States District Judge